GIBSON, DUNN & CRUTCHER LLP
JAMES P. FOGELMAN, SBN 161584
  jfogelman@gibsondunn.com
BROOKE M. WALLACE, SBN 259169
  bwallace@gibsondunn.com
JOHN M. SANDOVAL, SBN 318669
  jsandoval@gibsondunn.com
333 South Grand Avenue
Los Angeles, CA  90071-3197
Telephone:  213.229.7000
Facsimile:   213.229.7520

Attorney for Defendants
ALEXANDRIA REAL ESTATE EQUITIES, INC.,
JOEL S. MARCUS, and GARY DEAN

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| STEVEN MARCUS,<br><br>                    Plaintiff,<br><br>        v.<br><br>ALEXANDRIA REAL ESTATE<br>EQUITIES, INC., JOEL S. MARCUS,<br>AND GARY DEAN,<br><br>                    Defendants. | CASE NO. 2:21–CV–08088 SB (SKx)<br><br>**DEFENDANTS' NOTICE OF MOTION AND MOTION FOR SANCTIONS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**<br><br>Assigned for all purposes to<br>Judge Stanley Blumenfeld, Jr.<br><br>Date:  Mar. 18, 2022<br>Time: 8:30 a.m.<br>Courtroom: 6C<br><br>Complaint served:          Nov. 4, 2021<br>Response due:               Jan. 26, 2022<br><br>*[Filed / lodged concurrently herewith: Declaration of Brooke Myers Wallace; Request for Judicial Notice; [Proposed] Order]* |

1

**TO THE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on March 18, 2022, at 8:30 a.m., or as soon thereafter as the matter may be heard, in the United States Courthouse for the Central District of California, 350 West 1st Street, Los Angeles, California, 90012, Courtroom 6C, Defendants Alexandria Real Estate Equities, Inc. ("Alexandria"), Joel S. Marcus, and Gary Dean (collectively, "Defendants") will and hereby do move this Court for an order granting their Motion for Rule 11 Sanctions.

This Motion is based on this Notice of Motion and Motion; the accompanying Memorandum of Points and Authorities; the accompanying Declaration of Brooke Myers Wallace; the Request for Judicial Notice and all exhibits thereto; all records and papers on file in this action; any oral argument; and any such further evidence that the Court may consider in hearing this motion.  This Motion is made following service on January 26, 2022, pursuant to Federal Rule of Civil Procedure 11(c)(2), and following the conference of counsel pursuant to L.R. 7-3 which took place on November 10, 2021.

Dated:  February 16, 2022

JAMES P. FOGELMAN
BROOKE M. WALLACE
JOHN M. SANDOVAL
GIBSON, DUNN & CRUTCHER LLP

By:_____
          James P. Fogelman

Attorneys for Defendants
ALEXANDRIA REAL ESTATE EQUITIES,
INC., JOEL S. MARCUS, and GARY DEAN

## TABLE OF CONTENTS

Page

I. INTRODUCTION ................................................................................................ 1

II. FACTUAL BACKGROUND ............................................................................. 3

III. PROCEDURAL BACKGROUND ................................................................... 6

    A.   2019: Steven and "Bugsby" Sue Alexandria and Joel in New York State ........6

    B.   2019: Alexandria and Joel Initiate the L.A. Action ....................................7

    C.   2019-2020: "Bugsby" Sues Alexandria and Joel in the S.D.N.Y. ...................7

    D.   2020-2021: "Bugsby" Sues Alexandria in Massachusetts ...............................8

    E.   2020-2021: Steven Files, Then Abandons, Cross-Claims in the L.A. Action ...9

    F.   2021: Steven Brings This Copycat Case in the C.D. Cal. .............................10

IV. LEGAL STANDARD ...................................................................................... 12

V. ARGUMENT ................................................................................................... 13

    A.   SANCTIONS ARE WARRANTED BECAUSE STEVEN KNOWS THE COURT LACKS SUBJECT MATTER JURISDICTION .............................13

    B.   SANCTIONS ARE WARRANTED BASED ON STEVEN'S ATTEMPT TO RE-LITIGATE PAST LOSSES ................................................................15

       1. Claim Preclusion Bars the Complaint .............................................16

       2. Issue Preclusion Likewise Bars the Complaint ................................19

       3. Retraxit Also Bars the Complaint ....................................................20

       4. The Complaint Is Also Barred by the Compulsory Cross-Claim Rule ...........21

       5. The Rule Against Claim-Splitting Likewise Bars the Complaint ...................23

    C.   STEVEN'S CLAIMS HAVE LONG BEEN TIME-BARRED .....................23

VI. CONCLUSION ................................................................................................25

Gibson, Dunn &
Crutcher LLP

TABLE OF AUTHORITIES

Page(s)

**CASES**

*Adams v. Calif. Dep't. of Health Svcs.*,
   487 F.3d 684 (9th Cir. 2006) ..................................................................23

*Allied Fire Protection v. Diede Const., Inc.*,
   127 Cal. App. 4th 150 (2005) ..................................................................17

*Alpha Mech., Heating, & Air Conditioning, Inc. v. Travelers Cas. & Surety Co.*,
   133 Cal. App. 4th 1319 (2005) ................................................................20

*Aubry v. Tri-City Hosp. Dist.*,
   2 Cal. 4th 962 (1992) ..............................................................................20

*Bank of the Orient v. Sup. Ct.*,
   67 Cal. App. 3d 588 (1977) .....................................................................22

*Beats Elecs., LLC v. Lamar*,
   No. CV 14-7537 FMO, 2015 WL 9694787 (C.D. Cal. Aug. 31, 2015).............21, 23

*Blank v. Kirwan*,
   39 Cal. 3d 311 (1985)..............................................................................18

*Border Bus. Park, Inc. v. City of San Diego*,
   142 Cal. App. 4th 1538 (2006) ................................................................19

*Branson v. Nott*,
   62 F.3d 287 (9th Cir.), *cert. denied*, 516 U.S. 1009 (1995)....................15

*Branson v. Sun-Diamond Growers*,
   24 Cal. App. 4th 327 (1994) ...............................................................16, 17

*Buster v. Greisen*,
   104 F.3d 1186 (9th Cir. 1997) ..............................................2, 13, 15, 16

*Carroll v. Import Motors, Inc.*,
   33 Cal. App. 4th 1429 (1995) ..................................................................22

Gibson, Dunn &
Crutcher LLP

*Castillo v. Glenair, Inc.*,
   23 Cal. App. 5th 262 (2018) ...........................................................................17

*Chase v. Van Camp Sea Food Co.*,
   109 Cal. App. 38 (1930)..................................................................................21

*Christian v. Mattel, Inc.*,
   286 F.3d 1118 (9th Cir. 2002) ........................................................................13

*Cooter & Gell v. Hartmarx Corp.*,
   496 U.S. 384 (1990).........................................................................................12

*In re Crown Vintage, Inc.*,
   421 F.3d 963 (9th Cir. 2005) ..........................................................................21

*Delaney v. Superior Fast Freight*,
   14 Cal. App. 4th 590 (1993)............................................................................18

*Dreamweaver Andalusians, LLC v. Prudential Ins. Co. of Am.*,
   234 Cal. App. 4th 1168 (2015)........................................................................22

*Ellerhorst v. Blankman*,
   102 Cal. App. 133 (1929).................................................................................20

*Eulenberg v. Torley's, Inc.*,
   56 Cal. App. 2d 653 (1943)..............................................................................21

*Field v. Am. Mortg. Express Corp.*,
   No. 12-16311, 584 Fed. Appx. 775 (9th Cir. 2014) .......................................21

*Fink v. Gomez*,
   239 F.3d 989 (9th Cir. 2001) ..........................................................................13

*Fox v. Ethicon Endo-Surgery, Inc.*,
   35 Cal. 3d 671 (2005)......................................................................................24

*Frett-Smith v. Vanterpool*,
   511 F.3d 396 (3d Cir. 2008) ...........................................................................14

*Furnace v. Giurbino*,
   838 F.3d 1019 (9th Cir. 2016) ........................................................................16

*Goldtree v. Spreckels*,
   135 Cal. 666 (1902) .........................................................................................18

Gibson, Dunn &
Crutcher LLP

DEFENDANTS' MTN. FOR SANCTIONS
MEMORANDUM OF POINTS AND AUTHORITIES                CASE NO. 2:21–CV–08088 SB (SKx)

*Gomez v. Vernon*,
    255 F.3d 1118 (9th Cir. 2001) ................................................................13

*Hill v. City of Clovis*,
    63 Cal. App. 4th 434 (1998) ..................................................................21

*Hilsenrath v. Nixon Peabody LLP*,
    No. C 07-3193, 2007 WL 2695830 (N.D. Cal. Sept. 11, 2007) ............14

*Huettig & Schromm, Inc. v. Landscape Contractors Council of N. California*,
    790 F.2d 1421 (9th Cir. 1986) ..............................................................15

*Kelly v. Vons Cos.*,
    67 Cal. App. 4th 1329 (1998) ................................................................15

*Kline v. Turner*,
    87 Cal. App. 4th 1369 (2001) ................................................................24

*Laker Airways, Inc. v. British Airways PLC*,
    182 F.3d 843 (11th Cir. 1999) ..............................................................22

*Malhiot v. S. Cal. Retail Clerks Union*,
    735 F.2d 1133 (9th Cir. 1984) ................................................................3

*McBride v. Boughton*,
    123 Cal. App. 4th 379 (2004) ................................................................20

*Mutuelles Unies v. Kroll & Linstrom*,
    957 F.2d 707 (9th Cir. 1992) ................................................................14

*Newman-Green, Inc. v. Alfonzo-Larrain*,
    490 U.S. 826 (1989) ..............................................................................14

*Orange Prod. Credit Ass'n v. Frontline Ventures Ltd.*,
    792 F.2d 797 (9th Cir. 1986) ..........................................................2, 15

*Pochiro Prudential Ins. Co. of Am.*,
    827 F.2d 1246 (9th Cir. 1987) ..............................................................21

*Ricard v. Grobstein*,
    6 Cal. App. 4th 157 (1992) ....................................................................23

*Rice v. Crow*,
    81 Cal. App. 4th 725 (2000) ..................................................................20

Gibson, Dunn &
Crutcher LLP

iv

*Rymer v. Hagler*,
    211 Cal. App. 3d 1171 (1989) ..................................................................19, 20

*Semtek Int'l Inc. v. Lockheed Martin Corp.*,
    531 U.S. 497 (2001) .......................................................................................15

*Sheehy v. The Roman Catholic Archbishop of San Francisco*,
    49 Cal. App. 2d 537 (1942) ...........................................................................20

*Simpson v. Lear Astronics Corp.*,
    77 F.3d 1170 (9th Cir. 1996) .........................................................................13

*Snowden v. City of Pismo Beach*,
    No. 2:15-CV-1389-ODW, 2015 WL 3466283 (C.D. Cal. June 1, 2015)................23

*Thuemler v. Chrysler Grp., LLC*,
    E052461, 2012 WL 489719 (Calif. Ct. App. Feb. 15, 2012) ................................21

*Townsend v. Holman Consulting Corp.*,
    929 F.2d 1358 (9th Cir. 1990) .........................................................................13

*U.S. v. The Haytian Republic*,
    154 U.S. 118 (1894) .......................................................................................23

*United Torah Educ. & Scholarship Fund, Inc. v. Solomon Capital, LLC*,
    No. CV 13-4330 DSF PLAx, 2013 WL 12116383 (C.D. Cal. Dec. 18, 2013) ........14

*Van de Kamp v. Bank of Am.*,
    204 Cal. App. 3d 819 (1988) ..........................................................................20

*Wells v. Marina City Prop., Inc.*,
    29 Cal. 3d 781 (1981).....................................................................................18

*White v. Connell*,
    No. C 17-03177 WHA, 2017 WL 3535033 (N.D. Cal. Aug. 17, 2017) .................14

### STATUTES

28 U.S.C. § 1927.................................................................................................3, 13

Code Civ. Proc. § 338(d).........................................................................................23

Code Civ. Proc. § 389 .............................................................................................22

Code Civ. Proc. § 426.10(c).....................................................................................21

Code Civ. Proc. § 426.50 ............................................................................................22

**RULES**

Fed. R. Civ. P. 11 ............................................................................................*passim*

**TREATISES**

Rest. 2d Judgments, § 13 ....................................................................................... 19

Gibson, Dunn &
Crutcher LLP

DEFENDANTS' MTN. FOR SANCTIONS
MEMORANDUM OF POINTS AND AUTHORITIES                    CASE NO. 2:21–CV–08088 SB (SKx)

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.  INTRODUCTION

This is a textbook case warranting Rule 11 sanctions.  The frivolous complaint filed here by Plaintiff Steven Marcus ("Steven") and his counsel is a virtual copycat of claims Steven has ***already lost in four other jurisdictions***, most recently as cross-claims that Steven litigated, lost, abandoned, and failed to appeal in Los Angeles Superior Court ("the L.A. Action").  Rather than take his losses and focus on defending against the meritorious claims brought against him by Defendants Alexandria Real Estate Equities, Inc. ("Alexandria") and Joel S. Marcus ("Joel") that are still pending against Steven in the L.A. Action, Steven persists in forum-shopping his trumped-up and repeatedly-rejected allegations to yet another jurisdiction—his fifth bite at his rotten apple—hoping in vain for a different result.  This bad-faith conduct is precisely the type of litigation abuse that Rule 11 was designed to prevent.  There is no legitimate argument in law or fact for why this case should turn out any differently than the prior four failed actions.  For a host of reasons—including lack of federal jurisdiction, claim and issue preclusion, retraxit, the rules regarding compulsory cross-claims and against claim-splitting, the statute of limitations, not to mention utter lack of merit—Steven's latest litigation gambit fails on its face and warrants immediate dismissal and sanctions.  *See* Fed. R. Civ. P. 11(b).

*First,* sanctions are appropriate because Steven brings this case in federal court despite the fact that the Southern District of New York already ruled that he is a "stateless" U.S. citizen who destroys federal-diversity jurisdiction *per se* (a ruling Steven did not appeal), and Steven can advance no "nonfrivolous argument" as to why the result should be any different this time.  *See* Fed. R. Civ. P. 11(b)(2).  In fact, the S.D.N.Y. already chastised Steven for attempting to manufacture diversity jurisdiction in that case by colluding his common-law spouse, a foreign citizen.  Now, in an even more outlandish attempt to avoid being kicked out of federal court, Steven's Complaint attempts to mislead the Court by conspicuously omitting any mention of his U.S.

citizenship (much less the prior court ruling that Steven is a "jurisdictional spoiler") in order to make it look like he is a diverse foreign citizen.  But Steven is not a foreign citizen—he is a dual citizen of the United States and (apparently) the United Kingdom.  According to the Ninth Circuit, a "stateless" U.S. citizen does not win a trip to federal court when they gain dual citizenship; only their U.S. citizenship is considered when ascertaining diversity.  Steven's omission of his dual citizenship, along with his failure to even address the prior adverse ruling regarding his statelessness, merits an award of sanctions.  *See, e.g.*, *Orange Prod. Credit Ass'n v. Frontline Ventures Ltd.*, 792 F.2d 797, 801 (9th Cir. 1986) (affirming grant of Rule 11 sanctions where plaintiff filed complaint in federal district court "which it must have known completely lacked a factual foundation for subject matter jurisdiction").

*Second*, Rule 11 sanctions are also appropriate this action is just the latest of many frivolous lawsuits that Steven has filed against his father, Joel, and the company he founded, Alexandria, either directly or through Steven's fake company, "Bugsby." *See Buster v. Greisen*, 104 F.3d 1186, 1190 (9th Cir. 1997) (awarding sanctions because "a reasonable and competent inquiry would have led" the plaintiff to the conclusion that "this suit was barred by . . . the prior judgment[s].").  The central (and incorrect) contention that forms the core of each of these suits is that Steven is entitled to compensation for a single PowerPoint presentation he prepared, essentially as a favor, in 2013, despite having expressly agreed—in emails and in a binding, executed contract—that he would not be paid for any such work.  Steven has lost (and/or abandoned) every one of the lawsuits he has filed, and this one should be dismissed for the same reasons—and sanctions awarded—as well as on the grounds of claim and issue preclusion, retraxit, the compulsory counter-claim rule, and the rule against claim-splitting.

*Third,* even if not for the jurisdictional defects and the numerous procedural bars to Steven's attempt to re-litigate issues he has lost, sanctions would still be warranted based on the fact that the Complaint is facially frivolous.  Incredibly, Steven's

Complaint attempts to repackage cross-claims that Steven already brought and lost (and subsequently abandoned) in the L.A. Action as a demand for "in excess of $100,000" of what essentially would be "prevailing party" attorneys' fees that Steven has incurred in defending the L.A. Action, which remains pending against him to this day.  Indeed, the L.A. Action remains pending despite Steven's multiple attempts to dismiss it—from demurrers, to an anti-SLAPP motion, to a motion for summary judgment—all of which were denied.  Thus, for Steven to file this action, purporting to seek prevailing-party fees incurred in the still-pending action against him—an action he is losing—is beyond asserting a novel theory; it is sanctionable.  Even worse, to make it look as if he was on the verge of winning the L.A. Action, Steven's Complaint ***falsely*** alleged that he "expected" to win a summary judgment motion that he had filed in that case.  But Steven had already ***lost*** his summary judgment motion ***before*** he filed his Complaint here.  *Malhiot v. S. Cal. Retail Clerks Union*, 735 F.2d 1133, 1138 (9th Cir. 1984) (holding that recklessly or intentionally misrepresenting facts constitutes "the requisite bad faith and intentional misconduct for which sanctions . . . are appropriate").  The Complaint is also frivolous on the merits in light of the mountain of contemporaneous communications (confirmed in an executed contract) in which Steven expressly agreed he would not receive any compensation for the limited work he performed in 2013; and because Steven's claims are obviously time-barred.

Each and every aspect of this case—from the jurisdiction to the merits—has already been conclusively litigated and cannot be reanimated here.  The Complaint should thus be dismissed, and sanctions imposed under Rule 11, as well as under 28 U.S.C. § 1927, and the Court's inherent authority to sanction bad-faith conduct.

## II.  FACTUAL BACKGROUND

For nearly a decade, Joel's son, Steven, remained directionless and unemployed, preferring to chase unattainable real-estate-development deals by trading on his father's name, connections, and capital.  Over the 2013 Thanksgiving holiday, in an effort to help his son find professional footing, Joel asked Steven for suggestions about

effectively communicating to the market a joint-venture financing strategy recently developed by Joel's company, Alexandria.  (*See* Request for Judicial Notice ("RJN")[1], Ex. 4.1, ¶ 4; Dkt. 2 (hereinafter, "Compl."), ¶ 13; Ex. 37, ¶ 4.)  Specifically, Joel offered to allow Steven to provide some limited advice in exchange for credit (i.e., he could tout advising Alexandria, a public company), but only on the express condition that Steven agree that he would not be compensated.  (Ex. 32 at 609; Ex. 37, ¶¶ 4, 6-7.)  As Joel explained to Steven, Alexandria has a (publicly available) anti-nepotism policy which precludes Joel (or anyone at Alexandria) from hiring a relative.  (Ex. 32 at 609; *see also* Compl. ¶¶ 39-41, 45; Ex. 37, ¶¶ 4, 6(a), Ex. A.)  Because of that policy, Joel could not (and would not) allow Steven to do any work for Alexandria for compensation, regardless of whether Steven pretended to perform the work in the name of "Bugsby."  (*Id.*; Ex. 37, ¶ 11.)  Had Steven suggested that he might seek compensation in the name of his fake company, Bugsby, Joel would never have allowed Steven to do the work, nor would have Alexandria.  (Ex. 37, ¶¶ 7, 11.)  Joel never asked "Bugsby" to do any work, never agreed "Bugsby" could do any work, and never would have agreed to allow "Bugsby" to do any work for Alexandria, let alone for compensation.  (*Id.*)

Joel's and Steven's agreement (advice for credit, not compensation) was later confirmed in the Confidential Information and Nondisclosure Agreement ("CNDA"). (Ex. 3 at 97.)  The CNDA, which is judicially noticeable, was negotiated by defendant Gary Dean ("Dean"), Alexandria's Executive Vice President of Real Estate Legal Affairs, and executed by Steven on December 30, 2013.  (*E.g.*, Ex. 3, ¶¶ 50, 52; Ex. 9.1, ¶¶ 16-17; Compl., ¶¶ 29-32; Ex. 36, ¶ 4.)  Its express terms confirm Steven's prior agreement and representations that he was not entitled to any compensation for his alleged "strategic advice" to Alexandria, although he would be permitted to disclose certain information about that work for marketing purposes.  (Ex. 3 at 100, ¶¶ 20-21.)

Steven repeatedly confirmed that he was not entitled to any compensation for

---

[1]  All citations are to the RJN unless otherwise indicated.

DEFENDANTS' MTN. FOR SANCTIONS
MEMORANDUM OF POINTS AND AUTHORITIES                    CASE NO. 2:21–CV–08088 SB (SKx)

this work, and would not be seeking any, in multiple, contemporaneous e-mails to Joel, including:

- In a December 12, 2013 e-mail to Joel, after Joel reminded Steven that "I can't pay you at 'are' bec[ause] we have an anti-nepotism policy," Steven acknowledged that he understood this, responding that "I'm not asking for it" and remarking that his supposed work for Alexandria instead "would be a good calling card."

- In a December 19, 2013 e-mail to Joel, after Joel again reminded Steven that "I cannot compensate you as you well know," Steven responded that "I have not asked for compensation but involvement (and the exposure it brings) and credit for some of these ideas have tremendous long-term benefit to me and my career and cost you nothing."

- In a December 30, 2013 e-mail to Joel, Steven confirmed that "I have not and will not seek any monetary remuneration for this specific work / project . . . . I do, however, want to be able to use a successful transaction (which would be great for all involved) as a case study with investors either as an individual or for a future vehicle to demonstrate how strategic advice / ideas translate to shareholder value."

- In a January 27, 2014 e-mail to Joel, where Steven again confirmed that he had "agreed . . . not to seek compensation" from Alexandria but had instead assisted Alexandria "without expectation of anything other than appreciation."

(Ex. 11, ¶ 3.)

Joel and Dean asked Steven to sign the CNDA, both as an individual, and on behalf of Steven's fictional company, Bugsby.  (*E.g.*, Ex. 3, ¶¶ 50, 52; Ex. 9.1, ¶¶ 16-17; Compl., ¶ 25; Ex. 36, ¶ 5.)  Steven, however, assured Dean that only Steven, and not "Bugsby," was involved in providing the advice at issue.  (*See* Compl., ¶ 29.)  In any event, "Bugsby" is Steven, and Steven is "Bugsby."  (*See, e.g.*, Ex. 9.1, ¶ 16; Ex. 10 at 287; Ex. 17, ¶ 9; Ex. 4.1, ¶¶ 5, 7, 9-10, 13, 17.)  As the Los Angeles Superior Court found, "[t]he entire evidentiary record shows that Bugsby is really a vehicle created and controlled by Steven and only operates through his services."  (Ex 10 at 287).

More than five years later, Steven filed a complaint in New York state court—the first of five claims for compensation relating to the advice he provided Alexandria in 2013.  (Ex. 3, ¶ 63 ("Steven Marcus and Bugsby are entitled to their due

consideration for creating Project Affirmed . . . .").)  In response, Alexandria and Joel filed the L.A. Action to "obtain a declaration" that "under the parties' valid agreement governing Steven Marcus's work, no compensation is owed to him or Bugsby." (Ex. 2, ¶ 1.)  Nearly three years after the L.A. Action was filed and while Alexandria's and Joel's claims against Steven are still pending, and months after Steven's latest attack on the L.A. Action was defeated, Steven brings this fifth action against Alexandria and Joel.  In this case, he alleges he is entitled to an award of damages in the form of attorneys' fees because the L.A. Action "could not have occurred absent the false statements and [his] subsequent signature" to the CNDA.  (Compl., ¶ 1.)  Also, notwithstanding having voluntarily abandoned his L.A. cross-claim which sought a declaration that the CNDA was unenforceable due to alleged fraud and threats, Steven engages in the worst kind of "forum shopping" and demands the exact same relief from this Court.  (*Id.*)

## III.  PROCEDURAL BACKGROUND

### A.    2019: Steven and "Bugsby" Sue Alexandria and Joel in New York State

In February 2019, Steven filed his first frivolous lawsuit against Alexandria and Joel in New York state court (the "N.Y. Action").  (Exs. 1, 3.)  The operative complaint, filed in his own name and in  "Bugsby's," alleged:

> In late 2013, Plaintiff Steven Marcus, through his company Plaintiff Bugsby, provided strategic advice to [Alexandria, and that] advice became the cornerstone of a long-term share price turnaround at [Alexandria] and was even given an internal code name, 'Project Affirmed[,]' . . . but Steven Marcus and Bugsby were never fairly compensated for creating Project Affirmed.

(Ex. 3, ¶ 1; *see also* Ex. 32 at 610.)  Steven's baseless allegations in New York mirror those made here and in Los Angeles (Ex. 32 at 610), as the S.D.N.Y. would later recognize.  (*Infra*, Part III.C.)

Alexandria and Joel moved to dismiss the N.Y. Action on multiple grounds. (Ex. 5 at 166.)  Their motion was granted for *forum non conveniens*, on the express condition that Alexandria and Joel "consent" to Steven pleading his claims as cross-

claims in the pending L.A. Action.  (*Id.* at 171.)  Alexandria and Joel agreed (Ex. 9), judgment was entered in favor of Alexandria and Joel (Ex. 8), and Steven did not appeal.  (Ex. 33 at 617.)

**B.    2019: Alexandria and Joel Initiate the L.A. Action**

In response to Steven's pre-suit demand for millions in compensation he agreed he would not demand, Alexandria and Joel initiated the L.A. Action, seeking a declaration that no compensation was owed to Steven or "Bugsby" per the express terms of the CNDA, and Steven's other writings.  (Ex. 2, ¶ 1.)  Later, after the complaint against Bugsby was quashed, Alexandria and Joel amended their claims against Steven to seek damages relating to Steven's scheme to shake them down. (Ex. 11.)  Specifically, in addition to the declaratory judgment action, Alexandria and Joel alleged that Steven intentionally misrepresented his agreement to seek no compensation from Alexandria or Joel.  (*Id.*, ¶¶ 38-48.)  Alexandria and Joel also alleged that by suing them in New York and Massachusetts (*infra*, Part III.D), Steven breached the CNDA's express and implied terms, wherein Steven "acknowledge[d] and agree[d] that no compensation will be paid by Alexandria" in connection with his performance of work on "Project Affirmed."  (*Id.*, ¶¶ 49-59.)

Steven filed multiple motions seeking to dismiss the claims against him, all of which failed.  (*E.g.*, Exs. 10, 16, 32.)  Each of the failed attacks rested on the same issues raised in this Complaint.  (*Infra*, Part III.E.)

**C.    2019-2020: "Bugsby" Sues Alexandria and Joel in the S.D.N.Y.**

Just days after the N.Y. Action was dismissed on the express condition that Steven and "Bugsby" bring their claims in Los Angeles, "Bugsby" ignored that order and sued Alexandria and Joel in the S.D.N.Y.  (Ex. 6.)  To get out from under the dispositive CNDA, "Bugsby's" complaint omitted any reference to it.  (*See id.*)  To get into federal court, Steven—a "stateless," non-diverse U.S. citizen—filed the complaint in the name of "Bugsby," alone.  Other than that, however, "Bugsby's" claims in the S.D.N.Y. were "virtually identical" to those Steven and "Bugsby" brought first in New

York state, as the S.D.N.Y. recognized.  (Ex. 13 at 348.)  Likewise, as the S.D.N.Y. found, the complaint "concern[ed] the same facts" that were "at issue" in the "parallel action" in Los Angeles.  (*Id.* at 350 n.4.)

There were only two differences between the lawsuit Steven and "Bugsby" brought in the N.Y. Action and the lawsuit Steven brought on behalf of "Bugsby" in the S.D.N.Y.  The first had to do with Steven's pre-filing attempt to eliminate himself as a "stateless" non-diverse owner of "Bugsby," a limited liability company.  (Ex. 13 at 351.)  Second, Steven's damages demand groundlessly increased ten-fold.  (*Id.*)

Alexandria and Joel moved to dismiss the S.D.N.Y. Action on multiple grounds. As the S.D.N.Y. held when it dismissed "Bugsby's" complaint for lack of subject matter jurisdiction pursuant to 35 U.S.C. § 1359, Steven is a "stateless" citizen who "destroys diversity" because he is a U.S. citizen domiciled abroad (in the United Kingdom).  (Ex. 13 at 354.)  In an attempt to "eliminat[e]" Steven as a "non-diverse member" of "Bugsby," Steven gifted his ownership interest in "Bugsby" to his common law spouse, a French citizen.  (*Id.* at 355.)  In dismissing the complaint, the S.D.N.Y. correctly held that Steven's pre-filing reorganization of "Bugsby" "triggered" a "presumption of collusion;" that Steven "failed to offer any persuasive evidence that rebuts the presumption of collusion;" and "such a 'sham transaction' is precisely the sort of improper manipulation prohibited by Section 1359." (*Id.* at 359.)  "Bugsby" did not appeal.  (Ex. 35 at 622.)

D.    **2020-2021: "Bugsby" Sues Alexandria in Massachusetts**

After the S.D.N.Y. Action was dismissed, "Bugsby" continued to refuse to heed the New York court's transfer order. In yet another attempt to avoid the L.A. Action, Steven sued Alexandria in Massachusetts state court on behalf of "Bugsby" in August 2020.  (Ex. 17.)  In the complaint, "Bugsby" conceded that its claims were "similar" to the claims it brought previously against Alexandria and Joel in the S.D.N.Y.  (*Id.*, ¶ 8.) Indeed, just as Steven had in prior cases, in Massachusetts "Bugsby" claimed that "Joel Marcus used a series of heavy-handed tactics *(which will be the subject of litigation in*

*California)* against Steven Marcus in an effort to permit [Alexandria] to wrongly and unjustly keep the value of Bugsby's solutions without paying for it or acknowledging it." (*Id.*, ¶ 43 (emphasis supplied).)

Again, Alexandria moved to dismiss the Massachusetts complaint on multiple grounds. (Ex. 26.) The court granted Alexandria's motion and dismissed the complaint **_with prejudice_**, holding that "Bugsby's claims" for quantum meruit and unjust enrichment were governed by California's two-year statute of limitations "and are therefore time-barred." (*Id.* at 545, 550.) Specifically, the court found that "Bugsby's claims accrued in December 2015," the date "Bugsby" alleged in its complaint was the first time "Alexandria [allegedly] used Bugsby's advice . . . ." (*Id.* at 548.) "Bugsby" filed a notice of appeal, but has not pursued it. (Ex. 35 at 626, 629.)

**E.    2020-2021: Steven Files, Then Abandons, Cross-Claims in the L.A. Action**

While Alexandria's motion to dismiss was pending in Massachusetts, in September 2020 Steven finally filed his cross-claims against Alexandria and Joel in the L.A. Action. (Ex. 18.) The cross-claims were virtually identical to the claims Steven and/or "Bugsby" brought in New York state and federal court, and in Massachusetts. Specifically, Steven claimed, *inter alia*, that Alexandria and Joel obtained Steven's signature on the CNDA through extortion by imposing undue severe financial and professional stress on Steven (*id.*, ¶¶ 61-65); and that Alexandria and Joel fraudulently induced Steven to sign the CNDA by lying about the existence of, and alleged "exceptions to," Alexandria's anti-nepotism policy (*id.*, ¶¶ 66-79). Moreover, just as he does in this case, Steven sought a declaratory judgment that the CNDA was not a valid or enforceable contract "given that (1) the [CNDA] was procured by fraud and concealment; and/or (2) the [CNDA] was procured by threats, duress, and/or undue influence; and/or (3) the [CNDA] is procedurally and/or substantively unconscionable . . . ." (*Id.*, ¶¶ 87-93.)

Separately, for the first time Steven also levied cross-claims against both of his parents for allegedly breaching their oral promise to pay for Steven's child's private-

1   school education.  (Ex. 18, ¶¶ 38-48, 80-86.)

2    Alexandria and Joel moved to dismiss all of Steven's cross-claims, except for

3   Steven's request for a declaratory judgment on the validity of the CNDA.  (Exs. 19,

4   21.)  Steven opposed. (Ex. 20.)  The court granted Alexandria's and Joel's demurrer,

5   and dismissed all of the demurred cross-claims ***on the merits, with leave to amend***.

6   (Ex. 22; Ex. 23 at 515.)  Specifically, the court dismissed the claim predicated on

7   "Joel's threats . . . in connection with the demand that Steven sign the [CNDA]"  (Ex.

8   18, ¶ 63), because Steven failed to allege that Alexandria or Joel "obtained 'property or

9   money' by [such] duress," as required.  (Ex. 23 at 514.)  In addition, the court

10   dismissed the fraud claims predicated on Alexandria's anti-nepotism policy, because

11   the cross-complaint "fail[ed] to plead a causal connection between [Alexandria and

12   Joel's] alleged misrepresentations / concealment and Steven's damages." (*Id.* at 514.)

13    Rather than amending his cross-complaint, Steven voluntarily abandoned all of

14   the cross-claims relating to his demand for compensation and the CNDA—***including***

15   ***the declaratory-relief claim that was not encompassed by the demurrer ruling***.  (Ex.

16   23 at 511.)  The only cross-claims Steven did not abandon were those relating to his

17   child's tuition.  (Ex. 33 at 591.)  When Alexandria and Joel again moved to dismiss

18   Steven's claims (Exs. 25, 28), Steven opposed the motion (Ex. 27), and the court

19   granted the motion ***without leave to amend*** on June 17, 2021.  (Exs. 29-30.)  Steven

20   failed to appeal.  At that point, all of Steven's cross-claims were fully and finally

21   resolved on the merits.  Only Alexandria's and Joel's claims against Steven remain

22   pending in the L.A. Action.  (*Supra*, Part III.B.)  No trial date has been set; discovery is

23   ongoing.

24   **F. 2021: Steven Brings This Copycat Case in the C.D. Cal.**

25    Just months after he abandoned his cross-claims and lost his motion for

26   summary judgment in the L.A. Action, Steven filed the substantively identical

27   Complaint before this Court.

28    Even though Steven's Complaint attempts to repackage his old claims to avoid

Gibson, Dunn &
Crutcher LLP

10

DEFENDANTS' MTN. FOR SANCTIONS
MEMORANDUM OF POINTS AND AUTHORITIES      CASE NO. 2:21–CV–08088 SB (SKx)

the consequences of his prior losses, they're still the same stale claims that he has litigated and lost before.  Steven argues that he would not have had to defend the action Alexandria and Joel brought against him in Los Angeles if Joel and Dean had not secured his signature on the CNDA purportedly through fraud.  (Compl., ¶¶ 1, 55.)  As damages, Steven pleads entitlement to an award of "attorneys['] fees incurred in defending" the allegedly "meritless" L.A. Action (that remains pending).  (*Id.*, ¶ 56.)

Although the packaging may appear different, the factual allegations underlying the Complaint have not changed at all since Steven first alleged them in New York and Massachusetts, or from when Steven alleged them, lost them, and then abandoned them, in the L.A. Action.  Steven re-alleges that Alexandria and Joel misrepresented the scope of Alexandria's (publicly available) anti-nepotism policy.  (*Compare Compl.*, ¶¶ 38-43, 71 *with* Ex. 18, ¶¶ 66-79 *with* Ex. 3, ¶¶ 52-58.)  He argues again that he only signed the CNDA because of Joel's and Dean's alleged "coercion" and threats. (*Compare* Compl., ¶¶ 46-51, 58, 64 *with* Ex. 18, ¶ 26 *and* Ex. 9.1, ¶¶ 10-18 *with* Ex. 3, ¶¶ 50-54 *and* Ex. 4 at 118-19.)  Steven asks again for a declaration that the CNDA does not bar him from seeking compensation from Alexandria (so it cannot be the basis for the L.A. Action).  (*Compare* Compl., ¶¶ 84-85 *with* Ex. 18, ¶¶ 30, 89.)  Finally, he alleges again that Dean fraudulently misrepresented the scope of the CNDA "and ARE's actual intention to treat the [CNDA] as covering past conduct" (*compare* Compl., ¶¶ 25, 29, 32-35, 78-80 *with* Ex. 12 at 327, 344), although the court in Los Angeles has already held that the scope of the CNDA must be determined by a jury. (Ex. 32 at 610-11.)

Steven's Complaint also alleges his purported "expectation" that he "will" prevail on summary judgment in the L.A. Action (Compl., ¶ 56) to make it seem as if he is on the verge of winning, when in fact he had already lost that motion before he filed the Complaint in this case.  In short, Steven's Complaint incredibly purports to demand an award of "prevailing party" attorneys' fees for a case Steven ***is losing*** (in the case of Alexandria's and Joel's claims against Steven), or has ***already lost*** (in the

Gibson, Dunn & Crutcher LLP

case of his cross-claims against Alexandria and Joel).

Also, in order to avoid the consequences of California's three-year statute of limitations for fraud, Steven purports to predicate his Complaint on "new" information allegedly "discovered" in August 2021, when Gary Dean submitted a declaration in the L.A. Action. (Compl., ¶¶ 32-36.) Steven's ridiculous claim is belied by his own admissions in prior complaints and pleadings, as well as findings made by the court in Massachusetts, as explained infra, Parts V.B.1 and V.C.

Finally, in order to falsely manufacture federal jurisdiction over the Complaint when none exists, Steven alleges that he is a "a citizen and resident of the United Kingdom." (Compl., ¶ 2.) Steven's Complaint however conspicuously and wrongfully omits his U.S. citizenship, which is fatal to jurisdiction. (*E.g.*, Ex. 3, ¶ 11; Wallace Decl., ¶ 3 (Steven's counsel represented that Steven has not renounced his U.S. citizenship).) The Court should reject Steven's attempt to secure yet another bite at the apple on his meritless claims, and dismiss the Complaint with prejudice.

## IV.  LEGAL STANDARD

The "central purpose of Rule 11 is to deter baseless filings in district court." *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 393 (1990). Under Rule 11, when an attorney presents a document to the Court, the attorney certifies to the best of the attorney's knowledge and after "an inquiry reasonable under the circumstances" that:

> (1) [the document] is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;

> (2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law;

> (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery;

Fed. R. Civ. P. 11(b). Rule 11(c)(4) further provides that a sanction imposed under the Rule may include payment of the opposing party's attorneys' fees resulting from the

violation, or other monetary or nonmonetary relief deemed appropriate by the Court, all geared toward "what suffices to deter repetition of the conduct." Fed. R. Civ. P. 11(c)(4).

Under Rule 11, a court may impose sanctions upon an attorney for filing papers that are "frivolous, legally unreasonable, or without factual foundation," or that are interposed for an "improper purpose," such as harassment. *Simpson v. Lear Astronics Corp.,* 77 F.3d 1170, 1177 (9th Cir. 1996). "Frivolous" filings are those that are "both baseless and made without a reasonable and competent inquiry." *Townsend v. Holman Consulting Corp.*, 929 F.2d 1358, 1362 (9th Cir. 1990). "Where, as here, a complaint is the primary focus of Rule 11 proceedings, a district court must conduct a two-prong inquiry to determine (1) whether the complaint is legally or factually 'baseless' from an objective perspective, and (2) if the attorney has conducted 'a reasonable and competent inquiry' before signing and filing it." *Christian v. Mattel, Inc.*, 286 F.3d 1118, 1127 (9th Cir. 2002) (citing *Buster*, 104 F.3d at 1990). As noted above, sanctions may be monetary and/or nonmonetary, and should be designed to "deter repetition of the conduct or comparable conduct by others similarly situated." Fed. R. Civ. P. 11(c)(4).

Section 1927 of Title 28 of the U.S. Code, entitled "Counsel's liability for excessive costs," provides that "[a]ny attorney . . . who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." 28 U.S.C. § 1927; *see also Gomez v. Vernon*, 255 F.3d 1118, 1134-35 (9th Cir. 2001). Moreover, courts have "inherent power" to sanction bad-faith conduct. *Fink v. Gomez*, 239 F.3d 989, 993–94 (9th Cir. 2001).

## V. ARGUMENT

### A. SANCTIONS ARE WARRANTED BECAUSE STEVEN KNOWS THE COURT LACKS SUBJECT MATTER JURISDICTION

First, the Court should award sanctions not just because Steven filed his Complaint knowing that the Court lacks subject matter jurisdiction but also because the

Complaint is plainly designed to mislead the Court regarding that fact.  Just as it was in the S.D.N.Y., Steven's Complaint must be dismissed for lack of subject matter jurisdiction because there can be no diversity between "stateless" Steven and California defendants Alexandria, Joel, and Dean.  (Ex. 13 at 354 (citing *Newman-Green, Inc. v. Alfonzo-Larrain*, 490 U.S. 826, 828 (1989)).)  To try to avoid that same loss here, Steven's Complaint intentionally omits any reference to his U.S. citizenship, alleging instead that he is a "citizen and resident of the United Kingdom."  (*Compare* Compl., ¶ 2 *with* Ex. 3, ¶ 11 (pleading Steven's U.S. citizenship) *with* Ex. 17, ¶ 9 (same) *and* Ex. 24, ¶ 1 (same).)  Nor does the Complaint in any way address that prior adverse ruling that forecloses jurisdiction here.  While Steven would have this Court conclude from his pleading that he is foreign, and therefore there is diversity jurisdiction, ***Steven is still a citizen of the U.S.***, per his counsel (Wallace Decl., ¶ 3), and that is all that matters for the purposes of ascertaining diversity jurisdiction.  "The Ninth Circuit has held that in determining citizenship for purposes of diversity jurisdiction, 'only the American nationality of the dual citizen should be recognized.'" *Hilsenrath v. Nixon Peabody LLP*, No. C 07-3193, 2007 WL 2695830, *1 (N.D. Cal. Sept. 11, 2007) (quoting *Mutuelles Unies v. Kroll & Linstrom*, 957 F.2d 707, 711 (9th Cir. 1992)) (dismissing case between a U.S. citizen and dual U.S./Israeli citizens who were domiciled in Israel, and therefore "stateless"); *see also United Torah Educ. & Scholarship Fund, Inc. v. Solomon Capital, LLC*, No. CV 13-4330 DSF (PLAx), 2013 WL 12116383, *1 (C.D. Cal. Dec. 18, 2013) (following the "emerging consensus among courts" and dismissing the complaint brought by a U.S. citizen domiciled in Israel even though he was also an Israeli citizen); *White v. Connell*, No. C 17-03177 WHA, 2017 WL 3535033, at *1 (N.D. Cal. Aug. 17, 2017) (collecting cases); *Frett-Smith v. Vanterpool*, 511 F.3d 396, 400 (3d Cir. 2008) (collecting cases and holding that teacher with dual citizenship domiciled abroad was nonetheless a "stateless" U.S. citizen because "for purposes of diversity jurisdiction, only the American nationality of a dual national is recognized").

DEFENDANTS' MTN. FOR SANCTIONS
MEMORANDUM OF POINTS AND AUTHORITIES                    CASE NO. 2:21–CV–08088 SB (SKx)

Just as when "Bugsby" was kicked out of the S.D.N.Y., Steven was and remains a "stateless" citizen who cannot sue or be sued in federal court—even if he is now a dual citizen of the United States and United Kingdom.  There is simply no way that any "inquiry reasonable under the circumstances" would lead a lawyer or client to believe that subject matter jurisdiction exists here, and Steven's blatant disregard of the prior ruling that he is a "jurisdictional spoiler" is sanctionable.  *See, e.g.*, *Orange Prod. Credit Ass'n*, 792 F.2d at 801 (affirming grant of Rule 11 sanctions where plaintiff filed complaint in federal district court "which it must have known completely lacked a factual foundation for subject matter jurisdiction"); *Huettig & Schromm, Inc. v. Landscape Contractors Council of N. California*, 790 F.2d 1421, 1426 (9th Cir. 1986) (affirming district court finding that the that plaintiff's filing of the complaint despite not having "any claim to invoke this court's jurisdiction" suggested the action was brought "for an improper purpose," thus meriting sanctions).[2]

## B.    SANCTIONS ARE WARRANTED BASED ON STEVEN'S ATTEMPT TO RE-LITIGATE PAST LOSSES

It is also well-settled in California that a party to an action may not "re-litigat[e] in a second proceeding matters litigated and determined in a prior proceeding."  *Kelly v. Vons Cos.*, 67 Cal. App. 4th 1329, 1335 (1998); *Semtek Int'l Inc. v. Lockheed Martin Corp.*, 531 U.S. 497, 508-09 (a federal court sitting in diversity jurisdiction applies the preclusion law of the state in which it sits)  Here, multiple preclusion principles prohibit the re-litigation of the same claims and issues that Steven has already raised, litigated, and lost (then subsequently abandoned) in the L.A. Action (as well as in the other previous cases).  Sanctions are mandated because Steven and his counsel have

---

[2]  That this Court lacks subject matter jurisdiction over this dispute does not deprive the Court of the ability to sanction Steven and his counsel.  *See Buster*, 104 F.3d at 1190 (rejecting the argument that a court lacked the ability to order Rule 11 sanctions after finding it had no subject matter jurisdiction); *Branson v. Nott*, 62 F.3d 287, 293 (9th Cir.), *cert. denied*, 516 U.S. 1009 (1995) ("That the district court lacked subject matter jurisdiction over [plaintiff's] complaint does not preclude it from imposing Rule 11 sanctions for filing a frivolous complaint.").

1   not, nor could they, present any "nonfrivolous argument for extending, modifying, or

2   reversing existing law or establishing new law" such that Steven's prior losses would

3   not foreclose the claims brought in the Complaint.  Fed. R. Civ. P. 11(b)(2).  Because

4   "[t]his action involves the same parties and the same transactional nucleus of fact as

5   the prior suit and it seeks to re-litigate issues that were conclusively resolved in the

6   prior suit," sanctions are appropriate.  *Buster*, 104 F.3d at 1190  (internal quotations

7   omitted) (awarding sanctions where suit was "barred by the *res judicata* and collateral

8   estoppel effects of the prior judgment" and "a reasonable and competent inquiry would

9   have led to the same conclusion").  Sanctions are also particularly appropriate here, as

10  the Ninth Circuit has held that "successive complaints based upon propositions of law

11  previously rejected may constitute harassment under Rule 11."  *Id.* (internal quotations

12  omitted); *see also* Fed. R. Civ. P. 11(b)(1) (providing that sanctions are appropriate

13  where litigation is designed "to harass, cause unnecessary delay, or needlessly increase

14  the cost of litigation").

15      **1.      Claim Preclusion Bars the Complaint**

16          Steven's attempt to re-litigate his past losses is plainly barred by a number of

17  legal theories, including claim preclusion.  "Claim preclusion operates as a bar to a

18  second suit between the same parties or parties in privity with them on the same cause

19  of action."  *Branson v. Sun-Diamond Growers*, 24 Cal. App. 4th 327, 320 (1994).

20  Under California law, "[c]laim preclusion arises if a second suit involves: (1) the same

21  cause of action; (2) between the same parties [or parties in privity with them]; (3) after

22  a final judgment on the merits."  *Furnace v. Giurbino*, 838 F.3d 1019, 1023 (9th Cir.

23  2016).  There can be no dispute that, even from the face of the Complaint, all three

24  requirements are met here, and "a reasonable and competent inquiry would have led to

25  the same conclusion."  *Buster*, 104 F.3d at 1190.

26          *First*, Steven's claims here involve the same cause of action as all of his

27  previous suits, whether brought on his own behalf or on behalf of "Bugsby."  A

28  plaintiff states a single cause of action "[i]f the facts alleged show one primary right of

the plaintiff, and one wrong done by the defendant which involves that right."

*Branson*, 24 Cal. App. 4th at 341.  The "cause of action" is assessed "based upon the harm suffered," even if there are "multiple legal theories upon which recovery might be predicated."  *Id.* at 340.

The claims alleged in Los Angeles (like those in New York and Massachusetts), all stem from the same alleged violation of the same primary right—i.e., Steven's allegation that he was unlawfully deprived of compensation (including by forcing him to acquiesce to the CNDA's terms) for advice he, whether for himself or on behalf of "Bugsby," gave Alexandria and Joel.  Indeed, Steven's Complaint concedes that the CNDA is "the basis for a lawsuit against Steven Marcus in the California Superior Court for the County of Los Angeles."  (Compl., ¶ 1.)[3]

*Second*, the L.A. Action involves the same parties (Steven, Alexandria, and Joel).  Dean, the only new party to this case, may also enjoy the benefit of these preclusion principles because, with respect to these claims, he is in privity with Alexandria.  To ascertain privity, courts are to examine whether a party like Dean "is sufficiently close to the original case to afford application of the principle of preclusion."  *Castillo v. Glenair, Inc.*, 23 Cal. App. 5th 262, 277 (2018).  "Put another way, privity as used in the context of [claim preclusion] or [issue preclusion], does not embrace relationships between persons or entities, but rather it deals with a person's relationship *to the subject matter of the litigation*."  *Id.*

Dean is unquestionably in privity with Alexandria with respect to Steven's claims about the scope and effect of the CNDA.  As Steven has conceded in previous

---

[3]      Claim preclusion bars the Complaint even if Steven argues it is based on "new" information he allegedly discovered "earlier this year"—*i.e.*, that Dean "actually and always intended for the [CNDA] to apply retroactively."  (*See* Compl., ¶¶ 32-34.)  Not only is Steven's contention ridiculous—Steven negotiated the CNDA with Dean while Dean was representing Alexandria as legal counsel (E.g., Ex. 3, ¶¶ 50, 52; Ex. 4.1, ¶¶ 22-23, 25; Ex. 15, ¶¶ 3-5)—but claim preclusion serves as a bar to claims actually litigated as well as causes of action that could have been brought earlier with diligence.  *Allied Fire Protection v. Diede Constr., Inc.*, 127 Cal. App. 4th 150, 156 (2005).

Gibson, Dunn &
Crutcher LLP

complaints and declarations filed elsewhere, Steven negotiated the CNDA with "ARE" (i.e., Dean), while Dean was acting as Alexandria's legal counsel. (*Supra*, p. 15.) Several courts have held that an attorney-client relationship establishes privity for purposes of "tak[ing] advantage of the claim-preclusion available to the defendants" where, as here, the representation related to claims to be precluded. *Agha-Khan v. U.S.*, No. 1:1-CV-00042-AWI, 2015 WL 5734380, *5 (E.D. Cal. Sept. 29, 2015); *Weinberger v. Tucker*, 510 F.3d 486, 493 (4th Cir. 2007); *Plotner v. AT&T Corp.*, 224 F.3d 1161, 1169 (10th Cir. 2000); *Henry v. Farmer City St. Bank*, 808 F.2d 1228, 1235 n.6 (7th Cir. 1986). Indeed, Dean is (naturally) completely aligned with his client regarding the scope and effect of the CNDA—the CNDA he negotiated for his client—on Steven's claims. (*Compare* Ex. 32 at 609, 613 *with* Ex. 4.2 at 158-59.)

*Third*, the L.A. Action ended with a final judgment on the merits with respect to Steven's cross-claims. After Steven's cross-claims were dismissed with leave to amend, he abandoned, instead of re-pleading, the ones relating to his claim for compensation and the CNDA. In that situation, the California Supreme Court has held that the dismissal is "regarded as a conclusive determination of the litigation on its merits." *See Goldtree v. Spreckels*, 135 Cal. 666, 672 (1902); *see also Wells v. Marina City Prop., Inc.*, 29 Cal. 3d 781, 785 (1981) (judgment entered after a demurrer is sustained with leave to amend, and the plaintiff does not amend, is a judgment on the merits in order to prevent litigation from "becom[ing] interminable").

More significantly, Steven ***voluntarily abandoned*** his action for a declaratory judgment that the CNDA was unenforceable because of Alexandria's, Joel's, and Dean's alleged undue pressure and alleged misrepresentations because he omitted that cause of action when he amended his cross-complaint, which the court dismissed shortly thereafter. (*Infra*, Part V.B.3.) The filing of an amended pleading omitting a cause of action constitutes a voluntary abandonment of the omitted claim. *Delaney v. Superior Fast Freight*, 14 Cal. App. 4th 590, 594 (1993); *Blank v. Kirwan*, 39 Cal. 3d 311, 320 (1985). Thus, claim preclusion bars the re-litigation of Steven's lost and

1    abandoned cross-claims here.

2    **2.    Issue Preclusion Likewise Bars the Complaint**

3        Similarly, issue preclusion (also known as collateral estoppel) precludes Steven

4    from re-litigating the same issues that were actually litigated in prior actions.  Issue

5    preclusion applies if "(1) the issue decided in the prior adjudication [is] identical with

6    the one presented in the subsequent action; (2) the issue [was] actually litigated and

7    finally decided in the earlier action; and (3) the party against whom the doctrine is

8    asserted must have been a party or in privity with a party to the earlier action." *Rymer*

9    *v. Hagler*, 211 Cal. App. 3d 1171, 1180-81 (1989).  All of these requirements are met

10   here, and Steven can advance no "nonfrivolous argument" to the contrary.  *See* Fed. R.

11   Civ. P. 11(b)(2).

12       *First*, there are two foundational issues underlying the Complaint that should not

13   be re-litigated here: (a) Steven's allegation that Alexandria and Joel misrepresented the

14   scope of Alexandria's anti-nepotism policy to induce Steven to sign the CNDA; and

15   (b) Steven's allegation that Joel and Dean unlawfully pressured him or threatened him

16   into agreeing to the CNDA's terms.[4]  Those allegations were already litigated to

17   finality in Los Angeles, against Steven.

18       *Second*, the dismissal of Steven's cross-claims in the L.A. Action were "final"

19   and on the merits, as explained *supra*, Part V.B.1.  In any event, the standard for

20   finality for purposes of issue preclusion is less stringent than for claim preclusion; a

21   decision may be "final" for purposes of issue preclusion if it is "sufficiently firm to be

22   accorded preclusive effect."  *Border Bus. Park, Inc. v. City of San Diego*, 142 Cal.

23   App. 4th 1538, 1564 (2006) (citing Rest. 2d Judgments, § 13).  The following factors

24   are considered: "(1) whether the decision was not avowedly tentative; (2) whether the

25   parties were fully heard; (3) whether the court supported its decision with a reasoned

26   opinion; and (4) whether the decision was subject to an appeal."  *Id.* at 1565.  All

27
28
     ---
     [4]  In addition, as explained *infra* Part V.C, the date on which Steven's claims accrued
          should also not be re-litigated.

factors are present here.  Indeed, by abandoning his cross-claims (including the declaratory-relief claim that was not encompassed by the demurrer), rather than attempting to re-plead them, Steven "effect[ively] admitted that the demurrer was good and that his complaint was insufficient to state a cause of action." *Sheehy v. The Roman Catholic Archbishop of San Francisco,* 49 Cal. App. 2d 537, 540-41 (1942); *see also Ellerhorst v. Blankman*, 102 Cal. App. 133, 135 (1929) (failure to defend a pleading after demurrer may be treated as abandonment); *McBride v. Boughton*, 123 Cal. App. 4th 379, 386 (2004) (deeming causes of action abandoned when dropped from amended complaint after demurrer was sustained with leave to amend as to original complaint).  Moreover, voluntarily abandoning the cross-claims operates as a waiver to any right to claim error in the ruling on appeal.  *Aubry v. Tri-City Hosp. Dist.*, 2 Cal. 4th 962, 966, n.2 (1992); *Van de Kamp v. Bank of Am.*, 204 Cal. App. 3d 819, 866 (1988).

*Third*, the party against whom preclusion is sought—here, Steven—is the same party that litigated and subsequently abandoned his failed cross-claims in the L.A. Action.

*Finally*, treating the demurrer decision and Steven's subsequent abandonment of these claims as preclusive here would serve the policy of "protecting parties from endless litigation."  *See Rymer*, 211 Cal. App. 3d at 1181.  As recounted above, this is the *fifth* time that Steven (on behalf of himself or "Bugsby") has attempted to secure compensation for the limited advice he provided Alexandria and Joel, and get out from under the terms of the CNDA by alleging that Joel and Dean unduly pressured him and misrepresented the anti-nepotism policy.  Enough is enough.

### 3. Retraxit Also Bars the Complaint

A dismissal with prejudice after an "open and voluntary renunciation" of a claim, known as "retraxit," prevents a subsequent action on a dismissed claim.  *Rice v. Crow*, 81 Cal. App. 4th 725, 733 (2000); *Alpha Mech., Heating, & Air Conditioning, Inc. v. Travelers Cas. & Surety Co.*, 133 Cal. App. 4th 1319, 1326-33 (2005)

(discussing principles of retraxit and *res judicata*).  Where, like here, a plaintiff takes "affirmative" steps to "abandon" their action and it results in a dismissal with prejudice, it is "treated as a retraxit" and the plaintiff cannot bring the same claims in a different suit.  *Eulenberg v. Torley's, Inc.*, 56 Cal. App. 2d 653, 657 (1943); *Chase v. Van Camp Sea Food Co.*, 109 Cal. App. 38, 46-47 (1930) (retraxit bars subsequent suit by party who voluntarily dismissed their claims in a previous suit for a tactical reason); *Field v. Am. Mortg. Express Corp.*, No. 12-16311, 584 F. App'x. 775 (9th Cir. 2014) (applying California law and rejecting party's "post hoc attempts to retract" her "knowing[] and affirmative[] abandon[ment] of her claims" and re-litigate them because doing so would "encourage duplicative litigation, waste judicial resources, . . . and run counter to the California legislature's purpose of 'avoid[ing] recourse to costly and time-consuming judicial proceedings'"); *Thuemler v. Chrysler Grp., LLC*, E052461, 2012 WL 489719, *2-3 (Cal. Ct. App. Feb. 15, 2012) (unpublished) ("a retraxit is deemed to be final judgment on the merits").

### 4.    The Complaint Is Also Barred by the Compulsory Cross-Claim Rule

Yet another reason Steven's Complaint must be dismissed is because his claims were compulsory cross-claims that had to be litigated to conclusion in the L.A. Action.  "Federal courts will not permit an action to be maintained where the claims asserted should have been brought as a compulsory counterclaim in an earlier action, including a state-court action."  *Beats Elecs., LLC v. Lamar*, No. CV 14-7537 FMO, 2015 WL 9694787, *4 (C.D. Cal. Aug. 31, 2015) (citing *In re Crown Vintage, Inc.*, 421 F.3d 963, 973 n.7 (9th Cir. 2005)).  Whether claims are compulsory is a question of state law.  *Pochiro v. Prudential Ins. Co. of Am.*, 827 F.2d 1246, 1249 (9th Cir. 1987).

A cross-claim is compulsory where it "arise[s] out of the same transaction, occurrence, or series of transactions or occurrences as the cause of action" in the duplicative suit.  Cal. Civ. Proc. Code § 426.10(c).  Here, the Complaint admits conclusively that the CNDA at issue here is "the basis for a lawsuit against Steven Marcus in the California Superior Court for the County of Los Angeles."  (Compl.,

¶ 1.)  The fact that Steven voluntarily dismissed the cross-claims duplicated here does not alter the result.  *Hill v. City of Clovis*, 63 Cal. App. 4th 434, 445 (1998).  A "voluntary dismissal does not protect a cross-complainant from a later contention that a dismissed cause of action in a cross-complaint was compulsory and therefore required to be brought and adjudicated in the action initiated by the plaintiff." *Id.*; *see also Carroll v. Import Motors, Inc.*, 33 Cal. App. 4th 1429, 1435-36 (1995) (second complaint violated compulsory cross-complaint rule where it replicated issues raised in complaint previously dismissed from prior action while cross-claims were pending).

The Court should reject any attempt by Steven to argue that the Complaint does not violate the compulsory cross-claim rule because Steven's claim against Dean allegedly did not exist when Steven pled his cross-claims in Los Angeles. As addressed *supra*, Part V.B.1, the idea that Steven did not appreciate Dean's relevancy until Dean filed his August 2021 declaration in the L.A. Action is ridiculous on its face.  In any event, Steven has forfeited his right to rely on this argument.  If Steven believed that Dean's declaration gave rise to a "new" cause of action against him, Steven's recourse lay in moving to file an amended cross-complaint in the L.A. Action adding Dean as a party, not in bringing a duplicative suit here.[5]  *See Carroll*, 33 Cal. App. 4th at 1437. "[T]here is no reason in law or logic why a party who has voluntarily dismissed a complaint . . ."—or abandoned a cross-claim—"should be entitled to ignore the compulsory cross-complaint requirement."  *Id.*  Given the "expansive" nature of the

---

[5]  *See* Cal. Civ. Proc. Code § 426.50 (a party may seek permission to assert a compulsory cross-claim at any time during the action); *id.*, § 389 (indispensable parties); *Bank of the Orient v. Sup. Ct.*, 67 Cal. App. 3d 588, 597 (1977) (reversing trial court's refusal to allow the defendant to join plaintiff's insurer as a necessary party and file its proposed cross-complaint against the joined party plaintiff); *Dreamweaver Andalusians, LLC v. Prudential Ins. Co. of Am.*, 234 Cal. App. 4th 1168, 1174-75 (2015) (quoting *Laker Airways, Inc. v. British Airways PLC*, 182 F.3d 843, 848 (11th Cir. 1999)) (A "joint tortfeasor will be considered a necessary party when the absent party 'emerges as an active participant' in the allegations made in the complaint that are 'critical to the disposition of the important issues in the litigation'").

DEFENDANTS' MTN. FOR SANCTIONS
MEMORANDUM OF POINTS AND AUTHORITIES                         CASE NO. 2:21–CV–08088 SB (SKx)

compulsory counter-claim rule and its liberal construction "to effectuate its purpose of avoiding piecemeal litigation," the Complaint should be dismissed with prejudice.  *See Beats Elecs.*, 2015 WL 9694787, at *6.

### 5. The Rule Against Claim-Splitting Likewise Bars the Complaint

Now that the court in the L.A. Action has ruled that the scope of the CNDA (i.e., whether it was drafted to apply retroactively, as Alexandria and Joel allege) is an issue to be resolved by a jury (Ex. 32 at 609, 613), the Complaint may also be rejected for violating the rule against claim-splitting.  *U.S. v. The Haytian Republic*, 154 U.S. 118, 123-24 (1894).  In the Ninth Circuit, the rule against claim-splitting precludes duplicative complaints from being filed in order to get around an adverse ruling. *Adams v. Calif. Dep't. of Health Servs.*, 487 F.3d 684, 687-88 (9th Cir. 2006), *cert. denied*, 552 U.S. 1076 (2007), *overruled on other grounds by Taylor v. Sturgell*, 553 U.S. 880, 904 (2008) (affirming trial court's dismissal of a duplicative complaint with prejudice where the second complaint was filed to get around adverse ruling). Whether a claim is duplicative is assessed by reference to the "primary rights" theory "under which the invasion of one primary right gives rise to a single cause of action." *Ricard v. Grobstein*, 6 Cal. App. 4th 157, 162 (1992).  As explained *supra*, Part V.B.1, all of Steven's claims stem from the same alleged violation of the same alleged primary right, i.e., Steven's allegation that Alexandria, Joel, and Dean unlawfully deprived him of compensation, including by allegedly forcing him to acquiesce to the CNDA's terms.

## C.   STEVEN'S CLAIMS HAVE LONG BEEN TIME-BARRED

The Complaint is also barred by California's three-year statute of limitations for fraud, Cal. Civ. Proc. Code § 338(d), and Steven's decision to file this obviously time-barred complaint constitutes yet another basis for awarding Rule 11 sanctions.  *See Snowden v. City of Pismo Beach*, No. 2:15-CV-1389-ODW, 2015 WL 3466283, at *5–6 (C.D. Cal. June 1, 2015) (awarding sanctions where "a reasonabl[e] inquiry—that is, simple math—would have revealed that the instant action is barred by the statute of

limitations"). "Simple math" here confirms that Steven's purported claims have been time-barred for several years.[6]  Steven alleges that Alexandria's, Joel's, and Dean's coercion and fraudulent misrepresentations were targeted at procuring Steven's signature on the CNDA (Compl., ¶¶ 60, 66, 72-73, 79-80), which he executed on December 30, 2013.  (Ex. 3 at 101.)  Thus, Steven's fraud causes of action accrued no later than December 30, 2013.  To be timely, the Complaint would have had to be filed no later than December 30, 2016.  Because it was not filed until October 2021, Steven's fraud claims (counts 1-4) are time-barred.  Likewise, count 5, which is an action for declaratory relief, is based on Steven's claims of fraud, so it, too, is barred.

No credit should be given to any argument that the claims against Dean are not time-barred because they were not "discovered" until August 2021.  (*See* Compl., ¶ 34.)  As a matter of fact there is no way Steven only "discovered" Dean's alleged "fraud" in 2021, for the reasons explained *supra*, Part V.B.1.  Moreover, as a matter of law, Steven is charged with having discovered the fraud as soon as he "ha[d] information which would put a reasonable person on inquiry."  *Kline v. Turner*, 87 Cal. App. 4th 1369, 1373-74 (2001).[7]  Certainly Steven was "on inquiry" when he learned that Defendants did not share his interpretation of the CNDA.  According to the Massachusetts court, the latest Steven could have discovered the divergence in interpretations was December 2015.  When the Massachusetts court dismissed "Bugsby's" complaint with prejudice on the merits (Ex. 26 at 550), it held that the

---

[6]  Indeed, all of Steven's claims (which are governed by California law) have been time-barred under the California statute of limitations since long before he filed the N.Y. Action in 2019, which explains his multiple attempts at cross-country forum-shopping for longer statutes of limitations.  Having been kicked out of courts in New York and Massachusetts, however, Steven is left with no other option than to pursue his baseless claims in California and to attempt to trump up reasons that the fatal time-bar should not apply.

[7]  However, Steven cannot claim the benefit of the delayed-discovery rule where he has failed to specifically pleads facts sufficient to show that he was unable to have discovered Dean's alleged fraud earlier despite reasonable diligence. *Fox v. Ethicon Endo-Surgery, Inc.*, 35 Cal. 3d 671, 701 (2005).

"first joint venture in which Alexandria used Bugsby's advice . . . " without compensating Steven or "Bugsby," was, according to Steven's complaint, in "December 2015, when Alexandria sold a 70 percent stake in a Cambridge, Massachusetts, property."  (Ex. 26 at 548 (citing Ex. 17, ¶ 4)).

Steven should not be permitted to re-litigate the issue of the timeliness of his Complaint in light of the final ruling made in Massachusetts.  *Supra*, Part V.B.2; *Tahoe–Sierra Pres. Council, Inc. v. Tahoe Reg'l Planning Agency*, 322 F.3d 1064, 1081 (9th Cir. 2003) (A "dismissal on statute of limitations grounds is a judgment on the merits.").  Any argument that the Massachusetts ruling should not be preclusive on Steven because the complaint in Massachusetts was filed by Steven on "Bugsby's" behalf should be disregarded.  Steven and "Bugsby" are not only the one and the same (*supra*, p. 3), they have completely identical interests in this timeliness issue.  (*See* Ex. 23 at 514.)  Thus, even if Steven is afforded the benefit of the delayed-discovery rule (*supra*, p. 23 n.5), his claims here are time-barred.

In short, Steven can adduce no argument in fact or law, other than a frivolous one, that his claims are not time-barred, and sanctions are appropriate and necessary to keep him from continuing his baseless, harassing litigation.

## VI.  CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court impose sanctions jointly against Steven and his counsel consisting of fees incurred by Defendants in this action and such other sanction as the Court believes appropriate.[8]

---

[8]  Alexandria, Joel, and Dean are prepared to submit promptly an application for reasonable attorneys' fees and costs or any other submission requested by the Court in connection with such appropriate sanctions.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Dated:  February 16, 2022

JAMES P. FOGELMAN
BROOKE M. WALLACE
JOHN M. SANDOVAL
GIBSON, DUNN & CRUTCHER LLP

By:_____
         James P. Fogelman

Attorneys for Defendants
ALEXANDRIA REAL ESTATE EQUITIES,
INC., JOEL S. MARCUS, and GARY DEAN

105113163.9