UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| Case No.: | 2:21-cv-08088-SB-SK | Date: | May 3, 2022 |
|---|---|---|---|

| Title: | *Steven Marcus v. Alexandria Real Estate Equities, Inc. et al.* |
|---|---|

| Present: The Honorable | **STANLEY BLUMENFELD, JR., U.S. District Judge** |
|---|---|

| Jennifer Graciano | N/A |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorney(s) Present for Plaintiff(s): | Attorney(s) Present for Defendant(s): |
|---|---|
| None Appearing | None Appearing |

**Proceedings:**    **[In Chambers] ORDER IMPOSING SANCTIONS**

  Plaintiff Steven Marcus sued Defendants Alexandria Real Estate Equities, Inc. (ARE), Joel Marcus, and Gary Dean, alleging various claims related to a confidentiality and nondisclosure agreement (CNDA) that Plaintiff signed in 2013. Defendants move to impose Rule 11 sanctions on Plaintiff and his counsel for filing this case knowing that the Court lacked subject-matter jurisdiction and Plaintiff's claims were precluded and time-barred. Dkt. No. 24. Plaintiff did not file an opposition. On March 11, 2022, the Court dismissed the case for lack of subject-matter jurisdiction and issued an order to show cause re: Rule 11 Sanctions, Dkt. No. 34, to which Plaintiff's counsel timely filed a response, Dkt. No. 38. The Court held a hearing on the OSC and Defendants' motion on April 15, 2022, and now finds it appropriate to impose sanctions on Plaintiff's counsel.

## BACKGROUND

  In 2013, Joel Marcus approached his son, Plaintiff, and requested that Plaintiff and his company, Bugsby Property LLC, provide financial advisory services to Joel and his company, ARE. Compl., Dkt. No. 2, ¶¶ 13–15. Joel

informed Plaintiff that he could not be compensated due to ARE's anti-nepotism policy. *Id*. ¶¶ 39–41. To memorialize this understanding, Plaintiff and Joel executed an agreement (the CNDA) in December 2013. *Id*. ¶¶ 38–39. Plaintiff alleges that Joel misrepresented his inability to compensate Plaintiff and pressured him into signing the CNDA. *Id*. ¶¶ 41–44, 47–50.

This is fifth lawsuit in four years between Plaintiff and Defendants arising out of the CNDA and Plaintiff's claims for compensation.[1] Plaintiff and Bugsby first sued Joel and ARE in New York state court in 2019, and Joel and ARE filed suit in California state court shortly thereafter seeking declaratory relief. RJN, Dkt. No. 25, Exs. 1, 2. The New York state court case was dismissed for *forum non conveniens* on the condition that Joel and ARE allow Plaintiff to plead his dismissed claims as crossclaims in the California state court action, which they did. *Id*. Exs. 2, 5, 9.

Bugsby then filed an action in the United States District Court for the Southern District of New York (S.D.N.Y.). *Id*. Ex. 6. The court found that Plaintiff, as a U.S. citizen domiciled abroad, was "stateless" but had attempted to manufacture diversity by gifting his ownership interest in Bugsby to his common-law spouse, who is a French citizen. *Bugsby Prop. LLC v. Alexandria Real Est. Equities, Inc.*, No. 19-CV-9290 (VEC), 2020 WL 1974147, at *4 (S.D.N.Y. Apr. 24, 2020). This "trigger[ed] a presumption of collusion" under 28 U.S.C. § 1539, which prohibits a district court from exercising jurisdiction over a civil action in which any party is improperly or collusively made or joined to invoke federal jurisdiction. *Id*. Bugsby failed to rebut the presumption because there was no evidence that supported Bugsby's explanation that the transfer of Plaintiff's interest was for business reasons—indeed, Plaintiff continued to maintain "unilateral control over the company's operations." *Id*. The S.D.N.Y. court further noted that "the most glaring evidence that the transfer of membership interest was done for the purposes of creating diversity jurisdiction" was the fact that Plaintiff claimed to have transferred his interest to his spouse in 2017, but in the New York and California state court actions, he represented that he retained membership in the company and referred to himself as the principal and managing

---

[1] The Court **grants** Defendants' unopposed request for judicial notice of federal and state court filings from these prior related cases. Dkt. No. 25; *United States ex rel. Robinson Rancheria Citizens Council v. Borneo, Inc.*, 971 F.2d 244, 248 (9th Cir. 1992) (judicial notice is proper for proceedings in other courts that "have a direct relation to matters at issue").

member of Bugsby. *Id*. at \*5. Thus, as Bugsby failed to rebut the presumption that it colluded to manufacture jurisdiction, the court dismissed the case for lack of jurisdiction. *Id*. at \*6.

Bugsby later filed another action in Massachusetts state court alleging claims of quantum meruit and unjust enrichment. RJN Ex. 17. The court dismissed the case with prejudice, finding that the claims were barred by California's two-year statute of limitations. *Id*. Ex. 26. While the Massachusetts action was pending, Plaintiff filed his crossclaims in the California state court action for breach of contract, breach of the covenant of good faith and fair dealing, extortion, intentional misrepresentation, fraudulent concealment, unfair competition, and declaratory relief. *Id*. Ex. 18. Plaintiff alleged, as he does here, that Joel used threats to induce him to sign the CNDA and falsely told Plaintiff that he could not be compensated due to ARE's anti-nepotism policy. *Id*. ¶¶ 63, 68, 75, 89. Joel and ARE moved to dismiss Plaintiff's claims; the court granted the demurrer and gave Plaintiff leave to amend. *Id*. Ex. 23. Plaintiff amended his crossclaims and abandoned all his claims other than a breach of contract claim against his parents relating to a promise to pay Plaintiff's child's tuition. *Id*. Ex. 24. Joel and his wife moved to dismiss, and the court granted the demurrer without leave to amend. *Id*. Ex. 30.

Four months later, Plaintiff filed this action. In this latest lawsuit, Plaintiff alleged claims of fraud and fraudulent concealment and seeks declaratory relief, compensatory damages, and punitive damages. Compl. Defendants moved to dismiss this case for lack of subject-matter jurisdiction and for alleging precluded and time-barred claims, the same grounds for their motion for Rule 11 sanctions. Dkt. No. 21. Due to Plaintiff's selective allegations, the jurisdictional flaw was not apparent from the face of the pleadings. Plaintiff's complaint noted that he is domiciled in the United Kingdom but only mentioned his U.K. citizenship, Compl. ¶ 2, and his opposition did not expressly address the status of Plaintiff's American citizenship, Dkt. No. 28, at 2 (noting only that Plaintiff had "become a citizen of the U.K."). Given the prior litigation between the parties and Defendants' contention that Plaintiff was still a U.S. citizen, the Court ordered Plaintiff to file a statement indicating the status of his U.S. citizenship. Dkt. No. 32. Plaintiff timely responded and acknowledged for the first time that he retains his U.S. citizenship. Dkt. No. 33, at 1. The Court determined that Plaintiff's U.S. citizenship destroyed diversity because the Ninth Circuit only recognizes a dual citizen's American nationality, rendering Plaintiff a "stateless" U.S. citizen under 28 U.S.C. § 1332(a). Dkt. No. 34, at 3–4. In its order dismissing the case, the Court also issued an OSC as to why Plaintiff should not be subject to Rule 11

sanctions, "including monetary sanctions and attorney's fees and costs, for misrepresenting his citizenship status in an attempt to establish diversity jurisdiction and trying to relitigate precluded and time-barred claims." *Id.* at 4. Plaintiff timely filed a response to the OSC and appeared at the Court's hearing on April 15, 2022.

## LEGAL STANDARD

Federal Rule of Civil Procedure 11(b) provides that by presenting a pleading or motion to the court, an attorney certifies that there is a proper legal and factual basis for the filing. Rule 11(c) authorizes the Court to impose sanctions when attorneys violate their duties under Rule 11(b). Before filing a complaint, an attorney must both conduct a reasonable investigation of the factual assertions and confirm that the legal basis of the complaint is "warranted by existing law or a good faith argument for an extension, modification, or reversal of existing law." *Golden Eagle Distrib. Corp. v. Burroughs Corp.*, 801 F.2d 1531, 1537 (9th Cir. 1986). One of the fundamental purposes of Rule 11 is to "reduce frivolous claims, defenses or motions and to deter costly meritless maneuvers." *Id.* at 1536 (internal quotation marks omitted). When a "complaint is the primary focus of Rule 11 proceedings, a district court must conduct a two-prong inquiry to determine (1) whether the complaint is legally or factually baseless from an objective perspective, and (2) if the attorney has conducted a reasonable and competent inquiry before signing and filing it." *Christian v. Mattel, Inc.*, 286 F.3d 1118, 1127 (9th Cir. 2002) (cleaned up).

## DISCUSSION

### A.     Plaintiff's Counsel Violated Rule 11.

Plaintiff's counsel filed a complaint on behalf of his client that misrepresented Plaintiff's citizenship by disclosing only his U.K. citizenship. At the hearing, counsel stated that he did not ask his client about the status of his U.S. citizenship before filing the complaint. Still, counsel knew from the history of litigation between these parties that Plaintiff was an American citizen at least as of 2020, when counsel represented Bugsby in the S.D.N.Y. action. *Bugsby*, 2020 WL 1974147.[2] Yet he made no effort to obtain full citizenship information from his

---

[2] The S.D.N.Y. court even noted the jurisdictional consequences of Plaintiff's U.S. citizenship in its analysis by explaining that Plaintiff was "stateless" because he was a U.S. citizen domiciled abroad. *Bugsby*, 2020 WL 1974147, at *4. This put

client before filing suit in federal court and asserting diversity jurisdiction. This failure in and of itself violated counsel's obligations under Rule 11 to conduct a reasonable and competent inquiry before filing a complaint that invokes federal jurisdiction based on an allegation of diversity of citizenship.

Counsel explains that he later confirmed his client was still a U.S. citizen because Defendants brought the issue to his attention, but he maintains that he had not previously considered whether the information "mattered" for purposes of § 1332(a). Dkt. No. 38, at 2. Accepting this representation as true, counsel failed to conduct "adequate legal research" into whether jurisdiction was proper before filing the complaint. *Golden Eagle*, 801 F.2d at 1537. A reasonable inquiry would have made clear that the status of Plaintiff's U.S. citizenship was crucial for purposes of establishing subject-matter jurisdiction. Diversity jurisdiction requires complete diversity of citizenship between the parties. *See* 28 U.S.C. § 1332(a). Under Supreme Court authority, U.S. citizens domiciled abroad are considered "stateless" for purposes of § 1332(a) and destroy complete diversity. *Newman-Green, Inc. v. Alfonzo-Larrain*, 490 U.S. 826, 828–29 (1989) (holding that a U.S. citizen who "has not domicile in any State" is "stateless" for purposes of § 1332(a)(3)). And if a party is a dual citizen, the Ninth Circuit requires that a court consider only the American citizenship for purposes of determining diversity jurisdiction. *Mutuelles Unies v. Kroll & Linstrom*, 957 F.2d 707, 711 (9th Cir. 1992); *see also Matao Yokeno v. Sawako Sekiguchi*, 754 F.3d 649, 655 (9th Cir. 2014) (reaffirming the *Mutuelles* principle by noting that "[o]ur precedent directs us to consider only the American citizenship of a dual citizen for purposes of determining diversity"). Taken together, these principles clearly dictate the outcome for a dual citizen solely domiciled abroad: the court must consider him or her to be a "stateless" U.S. citizen who cannot establish diversity jurisdiction under § 1332(a).

At the hearing, counsel admitted that his position was not a strong one and that he "was not shocked to lose" on Defendants' motion to dismiss. But he claims he believed his argument was supported by dicta from a Seventh Circuit opinion cited in his opposition to the motion to dismiss and response to the OSC, *Sadat v.*

---

counsel on notice that the status of Plaintiff's American citizenship would be relevant for jurisdictional purposes, even if the court's dismissal ultimately rested on a different jurisdictional statute.

*Mertes*, 615 F.2d 1176 (7th Cir. 1980).³  This argument lacks merit.  First, the *Sadat* court came to the same conclusion as the Ninth Circuit:  "only the American nationality of the dual citizen should be recognized under 28 U.S.C. § 1332(a)." *Sadat*, 615 F.2d at 1187.  Indeed, the Ninth Circuit adopted this holding in *Mutuelles*.  957 F.2d at 711 (citing *Sadat*, 615 F.2d at 1187).  Second, the Seventh Circuit made clear that it has never adopted the language on which counsel relies, nor would it apply to Plaintiff in any event.  The *Sadat* court merely assumed, without deciding, that a dual citizen whose "dominant nationality is that of a foreign country should be regarded as a 'citizen or subject of a foreign state' within the meaning of [§ 1332(a)]."  *Sadat*, 615 F.2d at 1187.⁴

The Seventh Circuit later reiterated that *Sadat* "held that, when a dual citizen of the United States and a foreign country asserts the subject-matter jurisdiction of the federal courts under § 1332(a)(2), 'only the American nationality of the dual citizen should be recognized,'" such that dismissal was required where the plaintiff was a dual citizen of the United States and Switzerland and domiciled in Switzerland at the time she filed the complaint.  *Buchel-Ruegsegger v. Buchel*, 576 F.3d 451, 455 (7th Cir. 2009) (quoting *Sadat*, 615 F.2d at 1187).  The *Buchel* court made clear that *Sadat* did not adopt a "dominant nationality" test and that "no circuit court since *Sadat* has adopted or considered this test."  *Id*. at 454 n.2.  The court again declined to adopt the "dominant nationality" test and further emphasized that even if it did adopt such an exception, it "would only apply if the dual citizen 'has taken all reasonably practicable steps to avoid or terminate his status as a national of the [United States].'"  *Id*. (quoting *Sadat*, 615 F.2d at 1187).  The plaintiff in *Buchel* could not establish that she had taken "all reasonably practicable steps" to terminate her relationship with the United States because she had lived outside the United States for ten years and "never renounced" her U.S. citizenship.  *Id*. (quoting *Sadat*, 615 F.2d at 1187).

---

³ At the hearing, counsel referred to this as a Sixth Circuit decision, but this appears to have been error; counsel cites no Sixth Circuit case in his briefing, and the dicta he references appears in the *Sadat* case cited in his papers.

⁴ In his opposition, Plaintiff misstated the holding in *Sadat*, arguing that the Seventh Circuit determined that the plaintiff's citizenship did not create jurisdiction solely because his American citizenship was dominant.  Dkt. No. 28, at 3.

In short, counsel's position on jurisdiction directly contravenes express Ninth Circuit law that requires a court to consider only a dual citizen's American nationality for diversity purposes. *Mutuelles*. 957 F.2d at 711; *see also Hilsenrath v. Nixon Peabody LLP*, No. C 07-3193 CW, 2007 WL 2695830, at *1 (N.D. Cal. Sept. 11, 2007) (dismissing a case because the plaintiffs were dual citizens of the United States and Israel and domiciled in Israel defeating diversity under either § 1332(a)(1) or (2)). And even if counsel believed that he could argue that jurisdiction was proper under a "dominant nationality" exception that the Seventh Circuit twice expressly declined to adopt—and that has never been adopted in this circuit or any other—subsequent Seventh Circuit case law would have put counsel on notice that such an exception would not apply to Plaintiff. He, like the plaintiff in *Buchel*, 576 F.3d at 454 n.2, has lived outside of the United States for ten years and not renounced his U.S. citizenship, Dkt. No. 33, at 1.

Accordingly, the Court finds that Plaintiff's counsel violated his Rule 11 obligations.[5]

### B.   Sanctions are Appropriate.

As counsel violated Rule 11 by misrepresenting Plaintiff's citizenship and failing to conduct an adequate inquiry into whether jurisdiction was proper, sanctions are appropriate. Indeed, counsel conceded at the hearing that if the Court finds his position to be frivolous, then the Court should impose sanctions under Rule 11. Because the Court finds him responsible for the Rule 11 violation, it shall impose liability upon him rather than his client. *See Dible v. City of Chandler*, 242 F. App'x 473, 474 (9th Cir. 2007) (reversing district court for sanctioning a party under Rule 11 "for the sins of their attorney").

Defendants move the Court to sanction counsel by ordering him to pay their attorneys' fees incurred in defending this action. Payment of reasonable attorneys' fees and costs "directly resulting from the violation" of Rule 11 may be imposed as sanction. Fed. R. Civ. P. 11(c)(4). A court has "wide discretion in determining the appropriate sanction for a Rule 11 violation." *Hudson v. Moore Bus. Forms, Inc.*, 836 F.2d 1156, 1163 (9th Cir. 1987). It may look to the lodestar— i.e., the number

---

[5] There are also serious questions about whether Plaintiff's claims in the complaint are time-barred or otherwise precluded, but the Court dismissed the case solely for lack of subject-matter jurisdiction and, for purposes of Rule 11, does not decide whether the lawsuit was frivolous on these other grounds.

of hours reasonably expended multiplied by the reasonable hourly rate—to determine a "reasonable" amount of attorneys' fees. *Truesdell v. S. Cal. Permanente Med. Grp.*, 209 F.R.D. 169, 178 (C.D. Cal. 2002) (finding that a sanction of $4,945 was supported by the lodestar calculation). But while a court "must make some evaluation of the fee breakdown submitted by counsel," it need not "rigidly apply" the lodestar analysis. *Stargaze Mgmt., LLC v. George Smith Partners, Inc.*, No. CV-15-02755-R, 2015 WL 12656918, at *2 (C.D. Cal. Oct. 9, 2015) (citing *In re Yagman*, 796 F.2d 1165, 1185 (9th Cir. 1986)). Further, a court must consider what amount is appropriate to deter counsel's misconduct. Fed. R. Civ. P. 11(c)(4) (noting that a sanction "must be limited to what suffices to deter repetition of the conduct"); *see also Truesdell*, 209 F.R.D. at 175 ("Rule 11 is not designed as a fee-shifting provision or to compensate the opposing party. Its primary purpose is to deter sanctionable conduct.").

Defendants contend that they spent 223.9 hours defending this action and request a total of $221,044.50 in attorneys' fees. Dkt. No. 37-6. The rates and hours expended in this case do not demonstrate that over $200,000 is a reasonable or appropriate sanction for Plaintiff counsel's conduct. Four attorneys from Gibson Dunn and Crutcher LLP worked on this case, charging partner rates of $1,425 and $1,645 and associate rates of $845 and $995. Dkt. No. 37 (Fogelman Decl.), ¶¶ 16–19. Defense counsel attach the 2021 Real Rate Report in support of their rates. Dkt. No. 37-7. But the requested rates far exceed the median rates for partners and associates with similar levels of experience in Los Angeles. *Id*. at 26 (associate rates), 32 (partner rates). At the hearing, defense counsel supported their request by arguing that this Court recently approved Gibson Dunn's rates in another case, *Woodhouse v. U.S. Gov't*, No. 2:21-CV-06372-SB, 2021 WL 6333451, at *2 (C.D. Cal. Dec. 31, 2021). But the rates approved in that case, particularly the partner rates, were lower than what counsel requests here. *Woodhouse*, No. 2:21-cv-06372-SB, Dkt. No. 63-1, ¶ 9 (average rates requested were $1,032 for partner time and $785 for associate time). Further, counsel in *Woodhouse* spent fewer hours (159 in total) on a lawsuit that involved significantly more work than this action. *Woodhouse*, 2021 WL 6333451, at *1–2 (noting that the defendants had filed a motion to dismiss and a contempt motion and the plaintiff had submitted "at least fifteen" frivolous filings and sent defense counsel 170 emails in two months). Defense counsel here report that they spent more than 200 hours preparing a Joint Rule 26(f) report and drafting two motions. But counsel are admittedly familiar with the facts of this case, having represented Defendants in the prior lawsuits between these parties. Fogelman Decl. ¶ 14. And the two motions Defendants filed in this action sought relief on nearly identical grounds; they moved to dismiss this action and impose sanctions based on lack of

subject-matter jurisdiction and the allegation of precluded and time-barred claims. Dkt. Nos. 21, 24.

On this record, Defendants fail to show that the total amount of time and money expended in this case is a reasonable and appropriate sanction for Plaintiff counsel's Rule 11 violation. The requested $221,044.50 in attorneys' fees is more than what is necessary or appropriate to deter counsel's conduct. Having considered the gravity of counsel's Rule 11 violation, the amount necessary to deter further sanctionable conduct, and the reasonableness of the fee award, the Court in its discretion will grant partial reimbursement of Defendants' attorneys' fees in the amount of $50,000.

## CONCLUSION

For the foregoing reasons, the Court concludes that Plaintiff's counsel, Richard J. Mooney, violated Rule 11 and **ORDERS** him to pay Defendants Joel Marcus, Gary Dean, and Alexandria Real Estate Equities, Inc. sanctions in the amount of $50,000, representing a portion of the attorneys' fees they jointly expended in defending this action.


cc: Fiscal